IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

In re                                            Case No. 26-11062-LSS

William Castle                             Chapter 11

         Debtor.
_____/

**DEBTOR'S SUBCHAPTER V PLAN OF REORGANIZATION**

         Comes now Roger Schlossberg ("Mr. Schlossberg" or the "GAL"), in his capacity as court-appointed guardian *ad litem* of William Castle ("Mr. Castle" or the "Debtor"), by and through undersigned proposed counsel, pursuant to the rigors of Official Form 425A, and provides the following plan of reorganization (the "Plan") for Mr. Castle:

**Background for Cases Filed Under Subchapter V**

**a. Description and History of the Debtor's Business**

         Mr. Castle is a natural person, born in April 1946, who has enjoyed a distinguished career serving his county in the United States Navy, flying commercial aircraft as a pilot for US Airways, and pursuing various entrepreneurial endeavors. For more than a quarter century, Mr. Castle has resided at the property commonly known as 200 Braeburn Drive, Walkersville, Maryland 21793 (the "Property"), using the real estate both as a home and as a business. That business has included parceling off parts of the land, as originally conveyed to Mr. Castle, and—more recently—leasing two apartment units in a building separate from the primary residence.

         The Property has long been secured by two traditional mortgages, on which Mr. Castle has remained current through the years. However, during a long, complex, and much-disputed course of dealings with a gentleman named R. Carroll Waltemyer ("Mr. Waltemyer"), a third lien came to encumber the Property on account of a personal loan. Messrs. Castle and Waltemyer frequently engaged in business with one another, exchanging services for money, extending credit, and jointly interfacing with third parties on myriad occasions. Some of their dealings were properly documented; others were not. Some loans were documented; others were not. Payments on some loans were memorialized; others were not.

         The oft-informal nature of these two men's dealings never proved acutely problematic until Mr. Waltemyer passed away. As Mr. Castle mourned the loss of his longtime friend and frequent business partner, Mr. Castle also came to appreciate that dealing with an estate and its personal representative is a far more rigid and onerous process than dealing with a trusted colleague. Litigation ensued, with Mr. Waltemyer's estate endeavoring to collect not merely on old notes but, too, to foreclose on at least one obligation secured by the Property.

         During the course of that litigation—which assumed the form of two lawsuits in the Circuit Court for Frederick County, Maryland—certain questions arose about Mr. Castle's mental acuity. The state court ultimately appointed Mr. Schlossberg to serve as Mr. Castle's guardian *ad litem* in

each suit. When a trial date and a foreclosure date eventually neared, the decision was made to endeavor to save the Property—and afford Mr. Castle the certainty of continuity in his home alongside the equal certainty of an ongoing income stream through the collection of rents—by reorganizing under chapter 11.

At bottom, the dynamics of this case—as addressed in this Plan—are relatively simple: Mr. Castle wishes to continue to honor the regular payments on his two senior secured mortgage debts, to reduce his secured debt to Mr. Waltemyer's estate to the value of the secured portion of the subject claim, to pay the resulting secured claim in the form of a traditional 25-year mortgage, to pay administrative claims in full, to pay any tax claims that may be asserted, and to make remaining disposable funds available to unsecured creditors.

In identifying those disposable funds, there is some import in recognizing Mr. Castle's four separate income sources. He first derives exempt income from the Social Security Administration. He second derives exempt income from a military pension. He third derives exempt income from a US Airways pension. And he fourth derives nonexempt income from carrying on the business of being a landlord, being entitled to collect $3,950.00 per month in rental revenues from two tenants who share the Property with Mr. Castle. Between these four income sources, Mr. Castle has funds sufficient to pay his reasonable living expenses and still pay the claims of creditors. Through this Plan, and consistent with the mandate of title 11 of the United States Code (the "Bankruptcy Code"), Mr. Castle will pay secured claims in full over a 25-year temporal horizon; priority tax claims (which are not believed to exist) in full over a period running five years from the petition date of February 2, 2026; and administrative claims (to be paid in full) alongside general unsecured claims (to be paid at a discount) over a five year period.

    b. **Liquidation Analysis & Secured Claim Valuation**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.

In a chapter 7 liquidation, it is liberally estimated general unsecured creditors and administrative claimants would receive a net distribution of $26,524.68. *See* Liquidation Analysis, attached hereto as **Exhibit A**.

It bears notation, however, that a chapter 7 liquidation may well lead to a notably lower distribution, insofar as (i) there would be a likely need for a chapter 7 trustee to engage counsel, adding to the administrative expense claims and thusly diminishing the pool of monies available to general unsecured creditors; and (ii) there is likely a steeper-than-indicated liquidation discount that ought to be afforded to various items of personal property, including vehicles that would almost assuredly sell for a significant discount below their fair market value if subjected to the "fire sale" context of a chapter 7 trustee's liquidation.

Under this Plan, general unsecured creditors and administrative expense claimants will receive $29,715.60, a premium of more than 12% over what would be available in a chapter 7 liquidation.

### c. Ability to Make Future Plan Payments and Operate Without Further Reorganization

The Debtor must also show that he will have enough cash over the life of the Plan to make the required Plan payments. The Debtor's monthly income and expenses are set forth on Schedules I and J, as found at DE #40, pp. 31-34. The Debtor's income is divided into four streams: (i) payments from the Social Security Administration ("SSA Payments"); (ii) a military pension; (iii) a commercial airline pension; and (iv) rental income.

The SSA Payments, military pension and commercial airline pension are all notably secure income sources that will not be lessened and, to the contrary, that may invite future cost of living adjustments in a marginally upward manner. So these should be regarded as "safe" income channels, the sustainability of which is not genuinely subject to dispute.

The rental income received by the Debtor is, no doubt, subject to month-to-month collection quirks, as tenants—somewhat notoriously—do not always pay on time or even in full. However, there is relative confidence these funds will be collected without notable interruption or issue. And to the extent one or both tenants elect to move out, the rates charged by the Debtor are in line with prevailing market norms and should lend themselves to the prompt location of a new tenant.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

**Article 1.     Summary**

This Plan under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") proposes to pay creditors of the Debtor from the general cash flow of the Debtor.

The Plan provides for:     2 classes of secured claims;

1 class of general unsecured claims; and

1 class of an equity holder.

The Plan also provides for the payment of administrative priority claims other than those placed in classes.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

**Article 2.     Classification of Claims and Interests**

| | | |
|---|---|---|
| **Section 2.01** | **Class 1** | The secured claims serviced by Select Portfolio Servicing, Inc. |
| **Section 2.02** | **Class 2** | The secured claim of the Estate of R. Carroll Waltemyer |
| **Section 2.03** | **Class 3** | General unsecured creditors |
| **Section 2.04** | **Class 4** | The Debtor's equity interest |

**Article 3.    Treatment of Administrative Expense Claims and Court Costs**

| | | |
|---|---|---|
| **Section 3.01** | **Unclassified Claims** | Under § 1123(a)(1) of the Bankruptcy Code, certain administrative expense claims are not in classes. |
| **Section 3.02** | **Administrative Expense Claims** | Each holder of an administrative expense claim allowed under § 503 of the Bankruptcy Code will be paid in full, out of monies otherwise allocated to the payment of the Class 2 claims, on a monthly basis, commencing on the first business day of the first calendar month succeeding the effective date and continuing thereafter until such claims have been paid in full. These claims will be paid *before* the Class 2 claims. The time horizon of these payments—up to five years—is permitted under § 1191(e) of the Bankruptcy Code. All professionals. Including Mr. Schlossberg, the Debtor's counsel and the Subchapter V Trustee, will need to file applications with the Court to seek approval of their fee and expenses as allowed administrative expense claims within 30 days of the effective date. Post-petition, the Subchapter V Trustee shall continue to apply for all fees in accordance with Sections 330 and 331. |
| **Section 3.03** | **Priority Tax Claims** | There are not believed to exist any priority tax claims in this case. However, should any such claims nonetheless be extant, such claims will be paid in full, not later than the fifth anniversary of the petition date, from monies otherwise allocated to be shared by Section 3.02 administrative expense claimants and Class 2 claimants. Such tax claims will be paid *after* Section 3.02 administrative expense claimants and *before* Class 2 claimants, *except* any priority tax claim of less than $100.00 shall be paid in full on the effective date. |
| **Section 3.04** | **Statutory Fees** | There are no statutory fees due in this case. |
| **Section 3.05** | **Prospective Quarterly Fees** | There are no prospective quarterly fees that will be due in this case. |

## Article 4.    Treatment of Claims and Interest Under the Plan

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – Select Portfolio Servicing, Inc. | Unimpaired | Class 1 consists of the secured, undisputed claims serviced by Select Portfolio Servicing, Inc. These claims are secured by first and second liens on the Property. Both of the loans underlying these claims were fully performing pre-petition and no default has been declared. The Debtor will continue to pay these obligations in accord with the terms of the promissory notes and the lenders will retain their respective security interests in accord with the terms of their respective mortgages/deeds of trust. |
| Class 2 – Secured Claim of the Estate of R. Carroll Waltemyer | Impaired | Class 2 consists of the secured claim of the Estate of R. Carroll Waltemyer. This claim will be paid over a period of twenty-five (25) years, commencing June 1, 2026 (or, should the effective date be after June 1, 2026, then on the first business day of the first calendar month succeeding the effective date), with interest at 8% per annum, in accord with the amortization schedule attached hereto as **Exhibit B**. *Only* the secured portion of this creditor's claim is included in Class 2 and *only* the secured portion of this creditor's claim is being afforded this treatment; the creditor's unsecured claim is included in Class 3. The Class 2 claimant shall retain a lien on the Property, in accord with the provisions of the security instrument recorded in the land records pre-petition, *except* any provision of said instrument referencing a payment schedule different from that set forth herein, or referencing a maturity date |

| | | |
|---|---|---|
| | | different than that established herein, or relying on terms of a promissory note—or other debt instrument—making similar reference, shall be null and void. To the extent (i) the filing of this bankruptcy case; (ii) any pre-petition action of the Debtor; or (iii) any provision of this Plan would cause the security interest of the Class 2 claimant to create a default, to allow for acceleration of indebtedness, or to otherwise interfere with the language and intent of this Plan, the same shall be similarly null and void. |
| | | For the avoidance of ambiguity, the Class 2 claim shall only retain a lien on the Property to the extent of the allowed Class 2 claim, *less* payments made during the life of this Plan. The Class 2 claimant shall *not* retain a lien to the extent of the unsecured portion of the claim, which is placed in Class 3. |
| Class 3 – General Unsecured Creditors | Impaired | Class 3 shall receive—subject to the limitation set forth in the succeeding paragraph—quarterly payments, of $1,350.00, for a period of five years, commencing on the first business day of the first calendar month of the first full calendar quarter next succeeding the effective date. Such payments shall be disbursed to allowed Class 3 claimants *pari passu,* subject to the other limitations set forth herein (*de minimis* payments, etc.). |
| | | The foregoing notwithstanding, funds allocated for the payment of Class 3 shall *first* be used to satisfy, *en toto*, all Section 3.02 allowed administrative claimants, and shall *second* be used to satisfy, *en toto*, all Section 3.03 priority tax claimants (of which none are |

| | | |
|---|---|---|
| | | believed to exist). Members of Class 3 shall not receive a distribution in any calendar quarter unless and until Section 3.02 and Section 3.03 claimants have been paid in full, and any excess payment from the last quarter in which said Section 3.02 and Section 3.03 claimants are paid shall be added to the payment due to Class 3 claimants in the next calendar quarter. |
| Class 4 – Equity Interest | Unimpaired | Mr. Castle's equity interest shall remain unimpaired. For the avoidance of ambiguity, no exempt asset of Mr. Castle shall reenter his bankruptcy estate under any circumstances. |

**Article 5.     Allowance and Disallowance of Claims**

**Section 5.01    Disputed Claim.** A *disputed claim* is a claim that has not been allowed or disallowed and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**Section 5.02    Delay of Distribution of Disputed Claims.** No distribution will be made on account of a disputed claim unless such claim is allowed by a final, non-appealable order. The Debtor will delay distribution of payment to the holder of any disputed claim until the earlier of (i) the date on which such dispute is adjudicated in the form of a final order, to which all appellate rights have been exhausted or lapsed; or (ii) the business day next succeeding the last day on which such a dispute may be filed, per Section 5.04 hereof, if no such dispute is filed within that timeframe.

**Section 5.03    Settlement of Disputed Claims.** The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**Section 5.04    Timing for Dispute of Claims**. The Debtor will file objections to any disputed claims (except those deemed disputed on the Debtor's schedules where no proof of claim was thereafter filed) within six (6) calendar months of the effective date, *except* any objection to the claim of any governmental tax creditor may be filed at any time within ninety (90) days of the date on which such claim is filed.

**Article 6.     Provisions for Executory Contracts and Unexpired Leases**

**Section 6.01    Assumption.** The Debtor assumes the tenant leases, as noted on line 2.1 of Schedule G, as well as any and all contracts for (i) the provision of utility services (including

cellular communication services); (ii) the provision of insurance; (iii) merchant loyalty programs, including credit card "points" and airline "miles;" (iv) the provision of consumer services (such as pre-paid carwash vouchers); (iv) automobile warranties; (v) the use of storage lockers or comparable facilities; and (vi) the provision of any good or service for which payment was made in full pre-petition, or where payment has continued to be made contemporaneously post-petition.

**Section 6.02 Rejection.** The Debtor rejects all executory contracts and unexpired leases not assumed in Section 6.01 hereof.

**Article 7. Means for Implementation of the Plan**

As discussed in the portion of the preamble of this Plan that addresses the Debtor's ability to make payments, the entirety of this Plan is being funded by (i) SSA Payments; (ii) a military pension; (iii) a commercial airline pension; and (iv) rental income. The Debtor will continue to collect these monies, will use a portion thereof to continue to pay his ongoing living expenses, and will apply the projected residue to the payment of his obligations hereunder.

The Class 1 claims shall be paid in a *status quo* manner, consistent with the terms of the pre-petition loan documents underlying such claims. Neither of the Class 1 claims is set to mature during the five year period next succeeding confirmation of this Plan.

The Class 2 claim shall be paid in accord with the schedule attached hereto as Exhibit B. The Class 2 claim shall be payable in full upon a sale of the Property, whether such sale is occasioned by election or accomplished through liquidation of an estate resulting from the Debtor's death, *except* the Class 2 claim shall *not* be payable in full upon a transfer of the Property to any (i) limited liability company, of which Mr. Castle is the sole member; (ii) trust, of which Mr. Castle is both the settlor and an initial beneficiary (even if not the sole beneficiary); or (iii) spouse of Mr. Castle, so long as said spouse takes title to the Property as tenants by the entirety alongside Mr. Castle (each, an "Allowed Transfer"). In the even of any such Allowed Transfer, the lien of Class 2 shall continue to encumber the Property but the claim of Class 2 shall not be due on transfer.

Administrative expense claims, priority tax claims, and the claims of Class 3 shall be paid through the allocation of $1,350.00 per quarter, to be remitted quarterly and to be distributed in accord with the provisions of the treatment of Class 3 in Article 4 of this Plan.

**Article 8. General Provisions**

**Section 8.01 Definitions and Rules of Construction.** The definitions and rules of construction set forth in §§ 101-02 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

**Section 8.02 Effective Date.** The effective date of this Plan is the first business day succeeding the date on which the confirmation order becomes a final, non-appealable order.

**Section 8.03 Severability.** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**Section 8.04   Binding Effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors, assigns and/or receiver(s) of such entity.

**Section 8.05   Default.** Should there occur a default under this Plan, creditors will have all rights provided for in the Bankruptcy Code (including Section 1112 thereof, inclusive of its allowances for the bringing of a motion to convert this proceeding to one under chapter 7 of the Bankruptcy Code), as well as the right to seek recourse for breach of contract together with such remedies as this Honorable Court may deem just and proper, sitting as a court of equity; such rights will also vest in any interested parties with Article III standing to pursue such rights. A default hereunder shall be deemed to occur if the Debtor fails to make any payment provided for by this Plan, in the full amount so provided, and does not cure such failure within thirty (30) days of being given written notice of said failure by a party in interest. A default shall also be deemed to occur if the Debtor materially violates any substantive provision of this Plan.

**Section 8.06   Disbursing Agent.** Mr. Castle shall disburse all payments to Class 1 claimants. Mr. Schlossberg shall be the disbursing agent under this Plan for a term of five years, commencing on the effective date, but may resign from such role upon notice to this Court, in which case a new disbursing agent shall be judicially appointed, with the Subchapter V trustee being eligible to receive said appointment (even if the trusteeship has formally concluded prior to such date). After the fifth anniversary of the effective date, Mr. Castle shall thereafter make all payments, directly, to the Class 2 claimant, with no payment obligations being due to Class 3 after said date.

**Section 8.07   Stamp/Conveyance Taxes.** Pursuant to Section 1146(a) of the Bankruptcy Code, any conveyance pursuant to this Plan, which may be exempted from transfer or stamp tax, shall be so exempted.

**Section 8.08   Captions.** The headings contained in this Plan are for convenience of reference only, and do not affect the meaning or interpretation of this Plan.

**Section 8.09   Controlling Effect.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of Maryland govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**Section 8.10   Escheat.** If any distribution remains unclaimed for a period of 90 days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the holder entitled thereto, such unclaimed property shall be forfeited by such holder. Unclaimed property shall be (i) first paid to other members of the class of the claimant not claiming said distribution, until such time as said class is paid in full; (ii) second paid to each junior class, until all classes are paid in full; and (iii) then, if and when each class is paid in full, remaining funds shall be donated to the University of Miami School of Law Bankruptcy Clinic, to be administered by Patricia Redmond, Esq. in the charitable manner she sees most fit. The University of Miami School of Law Bankruptcy Clinic works with members of the South Florida legal community to provide *pro bono* services to persons in need of bankruptcy relief, while also furnishing law students with valuable pedagogical experience in the field of bankruptcy law.

**Section 8.11   Retention of Jurisdiction.** The United States Bankruptcy Court for the District of Maryland shall retain jurisdiction of this chapter 11 case to issue orders necessary to the consummation of the Plan; to determine the allowance of compensation and expenses of professionals; to determine any and all adversary proceedings, applications and contested matters; to determine issues or disputes relating to the assumption of executory contracts and any claims related thereto; to determine disputes as to classification or allowance of claims or interests; to issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code; to enforce the provisions of the Plan; to recover all assets of the Debtor and property of the Debtor's estate, wherever located; to resolve any dispute between or among any of the parties to this bankruptcy proceeding, to determine other such matters as may be set forth in a confirmation order or as may be authorized under the provisions of the Bankruptcy Code; to enter a final decree closing the bankruptcy case; and to correct any defect, cure any omission or reconcile any inconsistency in this Plan or confirmation order, and to take any action or make any ruling as may be necessary to carry out the purpose and intent of this Plan.

**Section 8.12   Modifications.** Modification of this Plan shall be governed by Section 1193 of the Bankruptcy Code.

**Section 8.13   Professional Fees.** Per Section 3.02 of this Plan, the Debtor must seek the approval of this Honorable Court prior to paying any professional fees incurred during the pendency of this case. Commencing on the effective date, however, the Debtor shall be free to pay any post-confirmation fees incurred by counsel, or other professionals (including counsel and the guardian *ad litem* but excepting the Subchapter V trustee), without first obtaining leave of court, and such professionals shall thereafter be excused from any requirement to seek leave of court.

**Section 8.14   Progress Reports.** The Debtor shall comply with Local Rule 3022-1(a)(2) in making semi-annual progress reports until such a time as a final decree is entered, provided, however, such reports may be filed by Mr. Schlossberg and may be of minimal duration, simply indicating whether or not payments have been made to the Class 2 and Class 3 claimants.

**Section 8.15   Fractional Distributions.** Notwithstanding anything in the Plan to the contrary, no payment of fractional cents shall be made pursuant to the Plan. Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with half cents or more being rounded up and fractions less than half of a cent being rounded down.

**Section 8.16   *De Minimis* Distributions.** Notwithstanding anything to the contrary contained in the Plan, the Debtor shall not be required to distribute, and shall not distribute, cash or other property to the holder of any allowed claim—except for a priority tax claim—if the amount of cash or other property to be distributed on account of such claim is less than $100.00. Any holder of an allowed claim on account of which the amount of cash or other property to be distributed is less than $100.00 shall be forever barred from asserting such claim.

**Section 8.17   Governing Law.**   Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the laws of the State of Maryland shall govern the construction and

implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

**Section 8.18 Entry of a Final Decree.** The Debtor may file a motion with the Court to obtain the entry of a final decree at such a time as a discharge is to be entered in accord with the provisions of Article 9 hereof.

**Article 9. Discharge**

**Section 9.01 Discharge.** The Court shall grant the Debtor a discharge pursuant to 11 U.S.C. § 1192 of all debts that arose prior to the Petition Date in this case, except any debt (1) on which the last payment is due after the first five (5) years of the Plan; and (2) debts of the kind specified in Section 523(a) of the Bankruptcy Code.

(a) If the Plan is confirmed under 11 U.S.C. § 1191 as a consensual plan, the Debtor shall receive a discharge on the effective date of the Plan; or

(b) If the Plan is confirmed under 11 U.S.C. § 1191(b), the Bankruptcy Court shall grant a discharge upon the completion of the plan payments being made in the 60th month succeeding the effective date.

**Section 9.02 Effect of Discharge.** This discharge will be effective against all creditors of the Debtor given notice of this bankruptcy case and sent a copy of this Plan, together with their respective members, managers, insiders, shareholders, officers, directors, trustees and receivers.

**Article 10. Notice of Substantial Consummation**

**Section 10.01** If the Plan is confirmed under 11 U.S.C. § 1191(a), the Debtor will file a Notice of Substantial Consummation not later than 14 days after the Plan is substantially consummated per 11 U.S.C. § 1183(c)(2).

Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
THE BELMONT FIRM
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
mac@dcbankruptcy.com
*Proposed Counsel for the Debtor*

/s/ Roger Schlossberg
Roger Schlossberg
Guardian *Ad Litem*