
# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
## Greenbelt Division

| | |
|---|---|
| In re | Case No. 26-11062-LSS |
| William Castle | Chapter 11 |
| Debtor. | |
| _____/ | |

### REPLY TO OPPOSITION TO MOTION TO UTILIZE
### FDIC-INSURED AND NCUA-INSURED DEPOSITORY ACCOUNTS

Comes now William Castle ("Mr. Castle" or the "Debtor"), through his guardian *ad litem*, Roger Schlossberg ("Mr. Schlossberg" or the "GAL"), in reply to the Objection to Motion to Utilize FDIC-Insured and NCUA-Insured Depository Accounts (the "Opposition"), DE #49, filed by the United States Trustee (the "US Trustee") in response to the underlying motion (the "Motion"), DE #7, of Mr. Castle, and states as follows:

### I.     Introduction

The US Trustee's own manual is not law and does not carry the force or effect of law. Nor do the Uniform Depository Agreements ("UDAs"), entered into between the US Trustee and various depository institutions, have the impact of creating any legal obligation on the part of debtors seeking chapter 11 relief. To the contrary, the law that governs the Motion—alongside so much of this Honorable Court's business—is title 11 of the United States Code (the "Bankruptcy Code"). And the Bankruptcy Code is express in noting that so long as a debtor's monies are insured by the United States or a department, agency or instrumentality thereof, the debtor may maintain existing depository relationships.

## II.  Argument: The Motion Should be Granted

The Opposition cites to two authorities external to the docket of this case: (i) the Bankruptcy Code; and (ii) the United States Trustee Program Policy and Practices Manual (the "UST Manual"). The former is binding law; the latter—while no doubt an oftentimes helpful and comprehensive resource—is ultimately only the thoroughly non-binding policy pronouncement of the Executive Branch.

The Debtor and the US Trustee are in agreement as to what is provided for in Section 345 of the Bankruptcy Code: if funds are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," 11 U.S.C. § 345(b), the subject monies must be protected by either (i) a bond in favor of the United States or (ii) a deposit of certain securities, *id.*

Similarly, the Opposition does not appear to dispute—as maintained in the Motion—that funds insured by the Federal Deposit Insurance Corporation ("FDIC") or National Credit Union Administration ("NCUA") are, as a result thereof, insured by an instrumentality of the United States and backed by the full faith and credit of the United States, 12 U.S.C. § 1811(a); 12 U.S.C. § 1781(a).

Where the two briefs differ is with regard to the impact, *vel non*, occasioned by the UST Manual. The Opposition suggests—albeit without ever expressly saying as much—that the Debtor is legally bound to follow the dictates of the UST Manual. The Debtor, by contrast, has urged that the UST Manual, in requiring a debtor-in-possession account ("DIP Account") be opened by each chapter 11 debtor, has departed from the dictates of the Bankruptcy Code in a manner unsupported by law.

Tellingly, the US Trustee does not cite to any authorities suggesting the UST Manual to be controlling law. Nor does the US Trustee cite to any cases holding Section 345 requires the opening of a DIP Account when a debtor's funds are beneath the FDIC (or NCUA) insurance threshold. The US Trustee, rather, simply asserts—more or less *ipso facto*—that because the UST Manual requires a DIP Account be opened, a DIP Account must thusly be opened.

Critically, however, the Supreme Court has made clear that even when a federal statute is ambiguous (something, as discussed *infra*, that is not the case here), the interpretation thereof by the Executive Branch is *not* to be afforded any deference or weight by the Judicial Branch:

> In an agency case as in any other, though, even if some judges might (or might not) consider the statute ambiguous, there is a best reading all the same—'the reading the court would have reached' if no agency were involved. It therefore makes no sense to speak of a 'permissible' interpretation that is not the one the court, after applying all relevant interpretive tools, concludes is best. In the business of statutory interpretation, if it is not the best, it is not permissible.

*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 400 (2024) (quoting *Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U. S. 837, 843 n.11 (1984)).

Indeed, so-called "*Chevron* deference" is no longer the law of the land post-*Loper Bright Enterprises*. Whereas agency interpretations were once afforded substantial weight in resolving ambiguities lingering throughout the United States Code and other federal statutory enactments, the high court has now made abundantly clear that the affording of such deference amounts to an impermissible encroachment on the Judicial Branch.

Tellingly, however, the demise of *Chevron* deference is also likely immaterial to the issue *sub judice* insofar as—at least on this point—the Bankruptcy Code is not particularly ambiguous. *See, e.g.*, *King v. Burwell*, 759 F.3d 358, 367 (4th Cir. 2014) (noting *Chevron* deference to only be applicable where a statute's "plain meaning" is "susceptible to multiple interpretations"). It is genuinely difficult to see how the operative language of Section 345—allowing debtors to keep

3

monies deposited so long as the deposits are "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," 11 U.S.C. § 345(b)—is "susceptible to multiple interpretations," *King*, 759. F.3d at 367.

To be sure, fully the first 40 words of Section 345(b)—providing the condition precedent to requirement of a bond or securities deposit—would be utterly without meaning if *every* deposit of monies was to be backed by a bond or securities deposit. 11 U.S.C. § 345(b). Under the reading supported by the US Trustee in this case, and advanced in the UST Manual, those 40 words are pure surplusage, to be disregarded because a bond or posting of securities is *always* required in chapter 11 cases. Yet, as case law makes abundantly clear, such a reading is facially disfavored as Congress is presumed to have imbued some meaning in every word of a given statute. *See, e.g.*, *City of Chi. v. Fulton*, 592 U.S. 154, 159 (2021) ("The canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.") (quoting *Yates v. United States*, 574 U. S. 528, 543 (2015)).

In many respects, the verbiage of the UST Manual mirrors governing law, and the UST Manual is, no doubt, and oft-helpful resource for bankruptcy professionals. Yet, in other respects, the UST Manual does not so much restate or synthesize governing law as seek to expound upon, and add to, governing law. The mandate that DIP Accounts be opened is one such area where the UST Manual departs—palpably and objectively—from the dictates of the Bankruptcy Code. And, in light of that demonstrable departure from actual, governing law, this is one area where the UST Manual is not enforceable.

After all, to hold otherwise would be to hold that the Executive Branch may dictate the financial dealings of chapter 11 debtors in direct contravention of the allowances imposed by

Congress under Section 345(b) of the Bankruptcy Code. And, just as the Executive Branch is not to supplant the Judicial Branch in interpreting statutes, *Loper Bright Enterprises*, 603 U.S. at 400, the Executive Branch is also not to supplant the Legislative Branch in crafting bankruptcy law, *see Siegel v. Fitzgerald*, 596 U.S. 464, 467 (2022) ("The Bankruptcy Clause empowers **Congress** to establish 'uniform Laws on the subject of Bankruptcies throughout the United States.'") (quoting U. S. Const., Art. I, § 8, cl. 4) (emphasis added).

### III.     Conclusion

WHEREFORE, the Debtor respectfully prays the Motion be granted, and for such other and further relief as may be just and proper.

Respectfully submitted,

Dated: March 11, 2026     By:     /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Proposed Counsel for the Debtor*

*[Certificate of Service on Following Page]*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 11th day of March 2026, a copy of the foregoing was served electronically upon filing via the ECF system on all counsel who have entered an appearance herein, including:

- Chaitanya Gopal   cgopal@raslg.com
- Stephen A. Metz   smetz@offitkurman.com, MD71@ecfcbis.com;lydia.yale@offitkurman.com
- Courtney L. Morgan   courtney.l.morgan@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
- L. Jeanette Rice   Jeanette.Rice@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
- US Trustee - Greenbelt   USTPRegion04.GB.ECF@USDOJ.GOV
- Maurice Belmont VerStandig   mac@mbvesq.com, lisa@mbvesq.com;mahlon@dcbankruptcy.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

                                                          /s/ Maurice B. VerStandig
                                                          Maurice B. VerStandig, Esq.